1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   MICHAEL W. TERRY,              )  NO. CV 06-04359 (SS)
                                    )
12              Plaintiff,          )
                                    )  **MEMORANDUM DECISION AND ORDER**
13        v.                        )
                                    )
14   MICHAEL ASTRUE,                )
     Commissioner of the Social     )
15   Security Administration,       )
                                    )
16              Defendant.          )
     ───────────────────────────────)

17

18

19        Plaintiff Michael Terry ("Plaintiff") brings this action seeking

20   to overturn the decision of the Commissioner of the Social Security

21   Administration[1] (the "Commissioner" or the "Agency") denying his

22   application for Supplemental Security Income benefits.  Alternatively,

23   he asks for a remand.  The parties consented, pursuant to 28 U.S.C. §

24   636(c), to the jurisdiction of the undersigned United States Magistrate

25   ─────────────────

26        [1] Michael J. Astrue has become the Commissioner of Social Security
     Administration.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
27   Procedure, he is substituted for Commissioner Jo Anne B. Barnhart as the
     defendant in this suit.  F.R.C.P. 25(d)(1).  The instant action survives
28   "notwithstanding any change in the person occupying the office of
     Commissioner of Social Security[.]" 42 U.S.C. § 405(g).

Judge.   This matter is before the Court on the parties' Joint Stipulation filed on May 3, 2007.   For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

On February 17, 2004, Plaintiff protectively filed an application for Supplemental Security Income disability benefits ("SSI") under Title XVI of the Social Security Act.[2]   (Administrative Record ("AR") 43). Plaintiff alleged that he is disabled due to chronic arthritis and back pain in the narrow discs.  (AR 43).

The Agency denied Plaintiff's claim for benefits initially.  (AR 43-47).   On April 23, 2004, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (AR 48).

ALJ Eric K. Benham conducted a hearing on May 23, 2005.  (AR 245-265).   On November 22, 2005, ALJ Benham issued a decision denying benefits.  (AR 30-39).  Plaintiff sought review of this decision before the Appeals Council.  (AR 10).   On July 18, 2006, the Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner.  (AR 4-10).  Plaintiff commenced the instant action on July 24, 2006.

---

[2]    Title XVI of the Social Security Act is codified at 42 U.S.C. §§ 1381-1385 ("Supplemental Security Income for Aged, Blind, and Disabled").   Plaintiff also sought Disability Insurance Benefits under Title II of the Social Security Act, but was deemed ineligible because he was not insured for such benefits at the time of his alleged disability.  (AR 9, 10, 54, 74, 98).

**FACTUAL BACKGROUND**

Plaintiff was born on November 28, 1951 and was fifty-three years old at the time of the hearing. (AR 49, 248). He has a twelfth-grade education plus a half semester of city college. (AR 248-249). Plaintiff was incarcerated at North Kern State Prison from 1995 to 1998 and at Chino State Prison from 2000 to 2002. (AR 34, 104-108). Plaintiff alleges that he became disabled due to back pain and chronic arthritis suffered in a work related injury in 1997. (AR 34, 43, 250). Plaintiff further alleges that the pain was exacerbated when he was hit with a baseball bat in the left leg, back and right ribs in 2000. (AR 34, 255). He previously worked as a laborer at a recycling center, a truck unloader, a dishwasher, and as a certified fire watcher at a shipyard. (AR 249-250).

A. **Plaintiff's Medical History**

Plaintiff has a history of back pain reportedly stemming back to 1995. (AR 34). Plaintiff was treated at North Kern State Prison from December 29, 1995 through February 13, 1996 and from June 11, 1998 through December 8, 1998. (AR 34, 105, 112-113). There are also medical records from Chino State Prison from October 24, 2000 through April 10, 2002. (AR 34, 92-104). Dr. Andrew Nicks performed an x-ray of Plaintiff's lumbar spine at Folsom State Prison on March 22, 2001. The x-ray showed minimal interbody disc narrowing between L5 and S1 due to degenerative disc disease. (AR 101).

\\

\\

3

Plaintiff began receiving conservative back treatment at the Long Beach Comprehensive Health Center on December 11, 2002. (AR 34). On December 11, 2002, x-rays of Plaintiff's lumbar spine showed straightened lordosis, degenerative changes at L5-S1 and small osteophytes at L4 and L5. (AR 34, 127). Plaintiff has continued to visit the Long Beach Comprehensive Health Center to obtain pain medications, but received no further treatment there. (AR 34).

### B.   Consultative Evaluation

Dr. Warran David Yu performed an orthopedic evaluation of Plaintiff on August 20, 2005 at the request of the California Disability Determination Service ("DDS"). (AR 34, 152-159). Plaintiff's chief complaint was back pain and chronic arthritis. (AR 34, 152). Dr. Yu found early disk degeneration at L5-S1. (AR 155). Dr. Yu noted that Plaintiff was subject to exertional limitations limiting him to occasionally lifting or carrying up to twenty pounds, frequently lifting or carrying ten pounds, standing or walking for about six hours in an eight-hour workday, and limited pushing and pulling in the lower extremities. (AR 156-157). Dr. Yu also found postural limitations restricting Plaintiff to occasionally climbing, balancing, kneeling, crouching, crawling, and stooping. (AR 157).

Unlike the findings of the other medical consultants, which concluded that Plaintiff had no environmental limitations, Dr. Yu noted environmental limitations restricting Plaintiff's exposure to temperature extremes, humidity and wetness, vibration, and hazards (i.e. machinery, heights). (AR 146, 159). However, Dr. Yu found Plaintiff's

4

motor strength and sensation in his upper and lower extremities to be grossly within normal limits.  (AR 154).  Dr. Yu also found that Plaintiff displayed Waddell signs during the examination, which led Dr. Yu to question the severity of Plaintiff's complaints.  (AR 155).

**C.    Non-Examining State Agency Physicians' Evaluations**

On March 29, 2004, medical consultants reviewed Plaintiff's medical records and performed a Physical Residual Functional Capacity Assessment ("RFCA").  (AR 142-151).  The RFCA determined that Plaintiff could occasionally lift and carry fifty pounds, frequently lift and carry twenty-five pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and perform unlimited pushing or pulling.  (AR 143).  The RFCA stated that Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl.  (AR 144).  It also noted that Plaintiff had no manipulative, visual, or communicative limitations.  (AR 145-146).  The medical consultants determined that Plaintiff had not established any environmental limitations, contradicting Dr. Yu's assessment.  (AR 146).  The medical consultants found Plaintiff's allegations to be only partially credible, based upon the medical evidence, and suggested a finding of "non-severe" impairments.  (AR 151).

\\

\\

\\

\\

\\

\\

1          D.    **Plaintiff's Testimony**

2

3          Plaintiff testified that he last worked in 1994 or 1995 as a

4    laborer at a recycling center, where he lifted boxes up to 150 pounds.

5    (AR 249-250).  Plaintiff testified that he had previously worked as a

6    manual laborer at an agency and as a certified fire watcher at a

7    shipyard.  (AR 250).  He claimed that he threw out his back lifting 150

8    pounds of scrap aluminum and that the pain in his back ricochets to his

9    tail bone up to his right rib cage.  (AR 250, 254).  Plaintiff also

10   claimed that he was assaulted with a baseball bat in 1997 with injuries

11   to his back, left leg and right ribs.  (AR 34, 255).

12

13         Plaintiff testified that he suffers from chronic arthritis.  (AR

14   250).  Plaintiff claimed that he could not sleep on his left side for

15   five years because of back pain.  (AR 251-252).  He stated that he

16   cannot climb, has difficulty turning, cannot twist, cannot bend over or

17   bend down, cannot stand up for long, and has difficulty sleeping.  (AR

18   254).  Plaintiff testified that he could walk for two blocks before

19   having to stop due to asthma, back pain, and leg pain.  (AR 258).  He

20   further testified that he could lift about ten to fifteen pounds without

21   severe pain and sit for about ten to fifteen minutes and stand for

22   approximately ten minutes without severe pain.

23

24         Plaintiff claimed that he has difficulty dressing himself and

25   showering, but does his own grocery shopping sometimes.  (AR 256-257).

26   He testified that he is taking Extra Strength Tylenol, SOMA muscle

27   relaxers, and Benadryl. (AR 251).  Plaintiff further testified that he

28   has been imprisoned a few times and has had both drug and alcohol

6

problems in the past, but that he has been sober for five years.  (AR 256).

### E.   Vocational Expert's Testimony

Mr. Randy Hetrick, a vocational expert ("VE"), testified at the hearing that Plaintiff's past relevant work was unskilled/semi-skilled and involved a medium level of exertion.  (AR 259).  The ALJ's first question posed to Mr. Hetrick assumed a hypothetical individual of Plaintiff's age, education, and prior work experience who can lift and carry fifty pounds occasionally and twenty pounds frequently; can walk six hours out of eight; and can sit six hours out of eight.  (AR 259).  Mr. Hetrick answered that such a person could perform all of Plaintiff's past work except for half of the work at the Recycling Center.  (AR 259-260).

The ALJ then posed a second hypothetical, assuming an individual with the same restrictions as above, but adding that the person can lift only twenty pounds occasionally and ten pounds frequently, and also limiting the person to occasional stooping, crouching, crawling, kneeling and climbing.  (AR 260).  Mr. Hetrick responded that the hypothetical person could not perform his past work and would have no skills from his past work experience that would be transferable to other work.  (AR 260).  Mr. Hetrick then stated that the hypothetical person could nonetheless perform many jobs in the regional and national economy involving a light level of exertion, including work as a cashier or an usher.  (AR 260).  For cashiers at the SVP two light level there were 45,000 regional positions in Los Angeles, Orange, and Riverside County.

7

For ushers at the SVP two light level there were 2,030 regional positions available in LA, Orange, and Riverside County. (AR 260).

The ALJ posed a third hypothetical, assuming the limitations of the second hypothetical person and adding that the person would need to be able to change positions from time to time, would be limited to occasionally bending to thirty degrees, would not be able to climb ladders or scaffolds, but could occasionally climb stairs and twist to the side. (AR 261). Mr. Hetrick responded that the hypothetical person would still be able to perform as an usher or cashier and would be able to do jobs such as a storage facility clerk at an SVP of two light, with 6,700 regional positions available in Los Angeles, Orange, and Riverside County. (AR 261).

The ALJ posed a fourth hypothetical, assuming the limitations of the third hypothetical, and adding that the person would be limited to carrying ten to fifteen pounds occasionally, carrying ten pounds frequently, and would be limited to standing and walking for no more than four hours. (AR 262). Mr. Hetrick responded that the hypothetical person would still be able to perform as a cashier or a storage facility clerk, but not as an usher. (AR 262).

The ALJ posed a fifth hypothetical, assuming the limitations of the fourth hypothetical, and adding that the lifting be no more than ten pounds occasionally and ten less frequently, and standing and walking be no more than two hours out of eight. (AR 262). Mr. Hetrick responded that the hypothetical person would not be able to be a cashier or a

8

storage facility clerk, but would be able to perform the full range of unskilled sedentary work.  (AR 262-263).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[3]    Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

9

(3)   Does the claimant's impairment meet or equal one of the list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)   Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[4] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100;

---

[4]   Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

10

1   Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

2   The Commissioner may do so by the testimony of a vocational expert or by

3   reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.

4   Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

5   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing

6   Tackett).   When a claimant has both exertional (strength-related) and

7   nonexertional limitations, the Grids are inapplicable and the ALJ must

8   take the testimony of a vocational expert.   Moore v. Apfel, 216 F.3d

9   864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340

10   (9th Cir. 1988)).

11

12                            **THE ALJ'S DECISION**

13

14       The ALJ employed the five-step sequential evaluation process

15   discussed above.   At the first step, the ALJ observed that Plaintiff had

16   not engaged in substantial gainful activity since the alleged onset date

17   based on testimony at the hearing and statements in the record as well

18   as Plaintiff's earnings record.   (AR 36).   Next, the ALJ found that

19   Plaintiff suffered from back pain and degeneration of the disks in the

20   lower back.   (AR 36).

21

22       At the third step, the ALJ found that Plaintiff's impairments did

23   not meet or equal any of the impairments appearing in the "Listing of

24   Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.

25   (AR 36).   In the fourth step of his analysis, the ALJ determined that

26   Plaintiff did not retain the residual functional capacity ("RFC") to

27   perform the requirements of his past relevant work, nor did he have

28   skills that were transferable to the skilled or semiskilled work

                                    11

activities of other work.  (AR 37).  However, the ALJ agreed with the testifying vocational expert that jobs existed in significant numbers in the national economy that Plaintiff could perform, consistent with his RFC, age, education and work experience.  (AR 37).  Therefore, he found that the Plaintiff was not disabled at any time through the date of the decision.  (AR 37).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not

substitute its judgment for that of the Commissioner.  <u>Reddick</u>, 157 F.3d
at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff contends that the ALJ's omission of Plaintiff's
environmental limitations in propounding hypotheticals to the VE
constitutes reversible error.  The Court disagrees with Plaintiff's
contention.

**<u>ALJ's Omission of Plaintiff's Environmental Limitations in
Hypotheticals Posed to the VE Does Not Require Remand</u>**

Plaintiff contends that in posing hypotheticals to the vocational
expert, the ALJ failed to include environmental limitations, including
avoiding operating vibrating machinery or working in extreme heat or
humidity (Jt. Stip. at 4-5).  Plaintiff further contends that this
omission constitutes reversible error, and requests that the case be
reversed and remanded in order to allow the ALJ to propound a complete
hypothetical to the vocational expert.  (Jt. Stip. at 6).  This Court
disagrees.

Hypothetical questions posed to a vocational expert must set out
all limitations and restrictions of Plaintiff (i.e. pain and an
inability to lift certain weights).  <u>Lewis v. Apfel</u>, 236 F.3d 503, 517
(9th Cir. 2001) (citing <u>Gamer v. Sec'y of Health and Human Servs.</u>, 815
F.2d 1275, 1280 (9th Cir. 1987)).  If the vocational expert's testimony
does not reflect all the claimant's limitations, the opinion of the

13

vocational expert that Plaintiff can perform jobs in the national economy has no evidentiary value. <u>See DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991) (citing <u>Embrey v. Bowen</u>, 849 F.2d 418, 423 (9th Cir. 1988); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984)). However, the error is not reversible where the mistake is "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." <u>See Stout v. Commissioner</u>, 454 F.3d 1050, 1055 (9th Cir. 2006).  The harmless error rule applies where the mistake is "immaterial" to the ALJ's disability conclusion. <u>Parra v. Astrue</u>, 481 F.3d 742, 747 (9th Cir. 2007) (citing <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1990)).  Remand is not required to correct a harmless error.  <u>Batson v. Comm'r of Soc. Sec.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004).

Consulting physician Dr. Yu stated that Plaintiff needed to avoid only the environmental conditions of exposure to extreme temperature, humidity, and vibration.  (AR 159).  However, medical consultants contradicted Dr. Yu's findings and concluded in the RFCA that Plaintiff had <u>not</u> established <u>any</u> environmental limitations.  (AR 146).  Since Dr. Yu was the only physician to find environmental limitations, and since evidence in the record contradicted Dr. Yu's findings, it is unclear whether the ALJ was actually required to include these limitations in any of the hypotheticals posed to the VE.  Plaintiff has not demonstrated that an error truly occurred.

However, even if error occurred, Plaintiff's contention that the error requires remand is not persuasive.  Mr. Hetrick, the testifying vocational expert, concluded that Plaintiff was capable of working as a

14

cashier, an usher, or a storage facility clerk, all of which are not subject to hazardous environmental conditions according to the DOT definitions.  <u>See</u> DOT 211.462-010, 344.677-014, 295.367-026.  As such, even if the ALJ had included the environmental limitations, the vocational expert would have found jobs that Plaintiff was capable of performing.

The vocational expert found that Plaintiff could perform work as a cashier, which is described according to the DOT as involving a light exertion level and no climbing, balancing, stooping, kneeling, crouching, or crawling.  <u>See</u> DOT 211.462-010.  The vocational expert also found that Plaintiff could work as an usher, which is described according to the DOT as involving a light exertion level and occasional stooping, crouching, reaching, handling, and fingering.  <u>See</u> DOT 344.677-014.  Lastly, the vocational expert found that plaintiff could work as a storage facility clerk, which is described as involving a light level of exertion and occasionally stooping and kneeling, and frequently reaching and handling.  <u>See</u> DOT 295.367-026.  More important, the DOT states that none of the three jobs listed above involves any exposure to extreme cold, extreme heat, wetness or humidity, or vibration.  <u>See</u> DOT 211.462-010, 344.677-014, 295.367-026.

As the DOT clearly states, all three jobs deemed suitable for Plaintiff involve none of the restricted environmental conditions.  <u>See</u> DOT 211.462-010, 344.677-014, 295.367-026.  Even if the ALJ had included the environmental restrictions in the hypotheticals proposed to the vocational expert, it would have had no bearing on the vocational expert's findings because the jobs that Mr. Hetrick determined Plaintiff

capable of performing do not involve exposure to the imposed environmental restrictions.   Thus, assuming any error in fact occurred, the error was harmless.  Stout, 454 F.3d at 1055 (harmless error rule applies when the mistake is nonprejudicial to the claimant or irrelevant to the ALJ's disability conclusion); Curry, 925 F.2d at 1129 (harmless error rule applies when the mistake is "immaterial" to the ALJ's nondisability determination).  Remand is not required.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 11, 2007.


_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

16